IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JOHN T. CLEVELAND,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of the Social Security Administration,<br><br>Defendant. | CV 18-143-BLG-TJC<br><br>**ORDER** |

Plaintiff John T. Cleveland ("Plaintiff") has filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433 and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. (Doc. 2.) The Commissioner has filed the Administrative Record ("A.R."). (Doc. 9).

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of "full

1

disability benefits" or alternatively for further administrative proceedings. (Doc. 11.) The motion is fully briefed and ripe for the Court's review. (Docs. 13, 14.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds Plaintiff's motion should be **DENIED**, and the Commissioner's decision should be **AFFIRMED**.

## I. PROCEDURAL BACKGROUND

On June 30, 2015, Plaintiff filed an application for disability insurance benefits. (A.R. 144-47.) Subsequently, Plaintiff filed an application for supplemental security income on May 22, 2017. (A.R. 156-61.) Plaintiff alleged he had been unable to work since February 18, 2008. (A.R. 185.) The Social Security Administration denied Plaintiff's application initially on September 4, 2015, and upon reconsideration on February 5, 2016. (A.R. 65-76; 77-86.) On April 5, 2016, Plaintiff filed a written request for a hearing. (A.R. 96-98.)

A hearing was held before Administrative Law Judge Richard A. Opp (the "ALJ") in Billings, Montana on October 11, 2017. (A.R. 41-64.) Plaintiff appeared at the hearing without counsel or a representative. (A.R. 43.) The ALJ confirmed that Plaintiff wished to proceed without representation. (A.R. 43-44.)

On October 19, 2017, the ALJ issued a partially favorable written decision finding Plaintiff not disabled prior to November 8, 2011, but determined he became disabled as of that date because his age category changed. (A.R. 26-35.) The ALJ's decision became final on July 30, 2018, when the Appeals Council denied Plaintiff's request for review. (A.R. 12-17.) Thereafter, Plaintiff filed the instant action.

Plaintiff argues the ALJ committed reversible error by (1) failing to develop the record; and (2) by not awarding him full benefits when he was in a borderline age situation.

## II. LEGAL STANDARDS

### A. Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d

653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

B.  **Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

### III. FACTUAL BACKGROUND

#### A. Medical Evidence

The Administrative Record includes Plaintiff's medical records from several health care providers. The medical records indicate that Plaintiff suffered a work-related injury on February 18, 2008, when he fell while unloading ice-cream products from his delivery truck. Thereafter, Plaintiff underwent two back surgeries. A hemilaminectomy was performed in July 2008, and a revision decompression and fusion was performed in July 2009.

The record includes Independent Medical Evaluations from two physicians – Dr. Anderson and Dr. Belleville – which are relevant to the first issue presented for review.

Dr. Anderson completed an Independent Medical Examination of Plaintiff on August 18, 2010. (A.R. 322-31.) Dr. Anderson extensively reviewed and summarized Plaintiff's medical records. (A.R. 323-27.) He also physically examined Plaintiff. (A.R. 327-29.) Dr. Anderson's impression was that Plaintiff had a "L4-5 and L5-S1 herniated disc." (A.R. 329.) He stated Plaintiff's complaints were likely related to residual scar tissue at the surgery site and facet arthrosis. (*Id.*) Dr. Anderson concluded that Plaintiff could tolerate sedentary work activity "for short periods of time if he is able to work at his own pace and lie down frequently." (A.R. 330.) Dr. Anderson further opined that "it is unlikely that [Plaintiff] will be able to return to gainful employment at any level." (*Id.*)

Dr. Belleville completed an Independent Medical Examination on September 9, 2013. (A.R. 579-605.) Dr. Belleville completed a lengthy review and summary of Plaintiff's medical history and physically examined Plaintiff. (A.R. 580-94; 597-601.) Dr. Belleville diagnosed Plaintiff with "multiple levels of degenerative disk disease of the lumbar spine" with "chronic pain syndrome of the

lumbar region, secondary to #1 (but with apparent embellishment and/or extreme anxiety)." (A.R. 601.) Dr. Belleville found Plaintiff's prognosis was poor, and the likelihood of Plaintiff returning to gainful employment was "probably less than 5% in general." (A.R. 603.) Nevertheless, Dr. Belleville opined Plaintiff could work a sedentary job. (A.R. 604.) He further opined "[t]here is no objective reason that [Plaintiff] could not eventually get back to eight hours a day." (*Id.*) Dr. Belleville explained Plaintiff's return to full time work would need to be gradual, "beginning at something such as four hours a day every other day for a couple of weeks" and increasing every couple of weeks. (*Id.*)

### B. The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 18, 2008. (A.R. 28.) Second, the ALJ found Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine, and coronary artery disease." (*Id.*) Third, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. (A.R. 29.) Fourth, the ALJ stated Plaintiff has the RFC to

perform sedentary work, with some restrictions.  (*Id.*)  The ALJ next found that Plaintiff was unable to perform his past relevant work.  (A.R. 33.)

The ALJ noted that on November 8, 2011, Plaintiff's age category changed from a "younger individual age 45-49" to an "individual closely approaching advanced age."  (A.R. 33.)  The ALJ found that prior to November 8, 2011, based on Plaintiff's "age, education, work experience and residual functional capacity," there were jobs that existed in significant numbers in the national economy that he could have performed.  (*Id.*)  When Plaintiff's age category changed, however, the ALJ held Medical-Vocational Rule 201.10 required a finding of disability.  (A.R. 34.)  Accordingly, the ALJ found Plaintiff was not disabled prior to November 8, 2011, but became disabled on that date.  (A.R. 34-35.)

IV. **DISCUSSION**

A. **Whether the ALJ Failed to Properly Develop the Record**

Plaintiff contends the ALJ failed to develop the record during the hearing. Plaintiff asserts there were inconsistencies and conflicting opinions – in particular with regard to Dr. Anderson and Dr. Belleville's reports – that required the ALJ to take additional actions to develop the record.  Plaintiff argues the ALJ could have had a medical examiner testify at the hearing or subpoenaed Plaintiff's medical

9

providers for additional information. In response, the Commissioner argues the record was more than sufficient for the ALJ to render a decision. The Court finds the ALJ did not err in this regard.

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110 (2000). As such, the ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty exists regardless of whether the claimant is represented. *Id.* "When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts." *Id.* The ALJ may discharge this duty by submitting further questions to the claimant's physicians, subpoenaing them to testify, continuing the hearing to augment the record, or keeping the record open after the hearing to allow supplementation. *Id.*; *Smolen*, 80 F.3d at 1288.

The fact the record may contain contrary medical opinions, however, does not necessarily require the ALJ to request more information. *McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011). The ALJ's duty to further develop the record "is triggered only when there is ambiguous evidence or when the record is

inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination."). Otherwise, the ALJ "is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").

In *McLeod v. Astrue*, 640 F.3d 881 (9th Cir. 2011), the Ninth Circuit determined the ALJ had no duty to request more information from two physicians where there was "nothing unclear or ambiguous about what they said." *Id.* at 884. *McLeod* is similar to this case. There, the physicians both agreed the claimant had a bad lower back condition based on his symptom reports, their physical examinations and the objective medical tests. *Id.* But one physician thought the claimant could do sedentary work, while the other thought he could not work at all.

11

*Id.* Similarly, here, both Dr. Anderson and Dr. Belleville found Plaintiff had disc problems in his lumbar spine. (A.R. 329; 601.) Dr. Anderson believes Plaintiff could tolerate some sedentary work activity, but not on a full-time basis. (A.R. 330.) Whereas, Dr. Belleville opined Plaintiff could eventually return to a full-time sedentary job. (A.R. 604.) Neither physician's opinion is unclear or ambiguous. To the contrary, both Dr. Anderson and Dr. Belleville's reports are thorough, and based on comprehensive reviews of Plaintiff's medical history, as well as physical examinations of Plaintiff. The physicians simply disagree on the extent of Plaintiff's functional abilities. This is precisely the type of conflict the ALJ is called upon to resolve. *Diedrich v. Berryhill*, 784 F.3d 634, 638 (9th Cir. 2017) ("The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it."). The fact Plaintiff disagrees with the conclusions rendered in Dr. Belleville's report, or with the ALJ's interpretation of those conclusions, is not a sufficient basis upon which to remand this case.

Plaintiff also construes some of the ALJ's statements about Plaintiff's credibility as showing there were ambiguities in the record that required further development. In particular, Plaintiff cites to the ALJ's statements that "the post-surgery imaging and physical examinations do not entirely support the claimant's

subjective complaints regarding his low-back and radicular symptoms" and that "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." (A.R. 30.)

The ALJ is required to made credibility findings. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). These findings must include a determination of whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged, and if so, the ALJ may reject the claimant's testimony only if he provides "specific, clear and convincing reasons" for doing so. *Id.* The portions of the ALJ's decision that Plaintiff cites are just that – credibility findings. They are not ambiguities. They are simply statements of the ALJ's conclusions regarding credibility.

The Court finds the ALJ reasonably considered the medical opinions and evidence in the record, and did not err by not developing the record further.

Accordingly, the Court rejects Plaintiff's request to remand this matter for further development of the record.

### B. The ALJ's Consideration of Plaintiff's Borderline Age Situation

Plaintiff next argues the ALJ erred by mechanically applying the age categories under the Medical-Vocational Guidelines (the "Grids") when he was in a borderline age situation. The Commissioner counters that the ALJ properly followed agency guidelines. The Court agrees with the Commissioner.

At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy." *Tackett*, 180 F.3d 1094, 1100 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1560(b)(3)). The Commissioner can meet this burden in two ways: (1) through the testimony of a vocational expert or (2) by reference to the Grids. *Id.* at 1101. The Grids are tables that contain the "four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983); 20 C.F.R. Pt. 404, Subpt. P, Appx. 2. There are three age categories for purposes of applying the Grids – younger persons (under age 50), persons closely approaching advanced

14

age (age 50-54), and persons of advanced age (age 55 or older). 20 C.F.R. §§ 404.1563(c)-(e); 416.963(c)-(e).

The Regulations acknowledge that as certain workers with significant impairments age, their ability to adjust to other work may be affected. 20 C.F.R. §§ 404.1563(c)-(e); 416.963(c)-(e). The Grids, therefore, may require a finding of disabled for an older claimant, whereas a similarly situated younger claimant would not be disabled. 20 C.F.R. Pt. 404, Subpt. P, Appx. 2.

The Regulations further provide:

We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. §§ 404.1563(b); 416.963(b).

Thus, the borderline age rule permits the ALJ to apply a higher age category if it would result in a finding of disability as opposed to non-disability, where the claimant is on the cusp of reaching the higher age category. The rule is discretionary. When confronted with a borderline age situation, "an ALJ is not *required* to use an older age category, even if the claimant is within a few days or a few months of reaching an older age category." *Lockwood v. Comm'r Soc. Sec.*

15

*Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (emphasis in original). Rather, the ALJ need only "*consider* whether to use the older age category." *Id.* (emphasis in original).

Here, Plaintiff does not seek the benefit of the borderline age rule to avoid a complete denial of benefits, but rather to receive a more favorable onset date and expand the amount of retroactive benefits he would receive. This is not a proper use of the borderline age rule.

The ALJ found that prior to November 8, 2011 – the date Plaintiff turned 50 – there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and thus, he was not disabled. (A.R. 33.) When Plaintiff turned 50, however, the ALJ determined a finding of disability was warranted by a direct application of the Grids. (A.R. 34.) The result of the ALJ's decision impacted the type and amount of benefits Plaintiff qualified for. For purposes of determining Plaintiff's eligibility for DIB, Plaintiff's date last insured was September 30, 2011. (A.R. 26.) As such, Plaintiff had to be found disabled on or before September 30, 2011 to receive DIB. 42 U.S.C. § 423(a). Because Plaintiff was not found disabled until November 8, 2011, he did not qualify for DIB. (A.R.

35.) But Plaintiff did qualify for SSI benefits. (*Id.*) Therefore, the ALJ issued a partially favorable decision.

Internal Social Security Administration guidelines make it clear that where a partially favorable decision has been rendered, there is no borderline age situation. The Hearings, Appeals and Litigation Law Manuel ("HALLEX") states:

> If using the claimant's chronological age will result in a favorable decision, an administrative law judge (ALJ) will not use the higher age category solely because it will result in a more favorable onset date, determination, or decision for the claimant.

HALLEX I-2-2-42 (S.S.A.), 2016 WL 1167001 at *1.

The Social Security Administration Program Operations Manual System ("POMS") instructs that: "If using the claimant's chronological age results in a partially or fully favorable determination, only consider the claimant's chronological age. This is not a borderline age situation." POMS DI 25015.006, Borderline Age, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015006 (last visited March 2020). Although the HALLEX and POMS do not impose judicially enforceable duties on either this court or the ALJ, they are "entitled to respect." *Lockwood*, 616 F.3d at 1073.

Moreover, Courts that have considered situations involving partially favorable disability decisions, have likewise held that the borderline age rule is

17

inapplicable. For example, in *Wells v. Colvin*, 2016 WL 5390935 (N.D. Mo. Sept. 27, 2016), the court declined to extend the borderline age rule where the ALJ issued a partially favorable decision. There, similar to here, the ALJ found the plaintiff retained some capacity to work, and was therefore not disabled until she attained the age of 55, at which time the Grids directed a finding of disabled. *Id.* at *3. The plaintiff argued the ALJ did not properly consider her borderline age situation. *Id.* at *4. The court found her argument without merit. *Id.* at *5. The court concluded the borderline age rule did not apply because the plaintiff was not seeking to use it "to avoid a complete denial of benefits, but instead to permit her to have a more favorable onset date and expand the number of months for which she can receive retroactive benefits." *Id.*

The Court finds this reasoning persuasive, as have many others. *See also Teresa G.S. v. Comm'r of Soc. Sec.*, 2020 WL 230706, *6 (Jan. 15, 2020) ("If plaintiff were denied benefits as opposed to receiving a partially favorable decision, she might have a more compelling argument . . . but that is not the case here. Plaintiff is simply asking for a more favorable onset date, and that alone is not enough."); *Berg v. Berryhill*, 2019 WL 3387209, *5 (E.D. Pa. July 26, 2019) ("[B]ecause Berg's age at the time of adjudication resulted in her receiving

benefits under the Grids, the borderline age rules do not apply to her case."); *Antal v. Berryhill*, 2018 WL 4038147, *5 (M.D. Penn. July 26, 2018) (finding the borderline age rule should not be extended to "cases in which reliance upon the claimant's chronological age has led to a partially favorable outcome since: 'This is not a borderline age situation.'"); *Lefebre v. Berryhill*, 2018 WL 4676156, *6 (E.D. Wis. Sept. 28, 2018) (finding ALJ did not err in in treating the plaintiff as a younger person prior to his 50th birthday, which resulted in a denial of DIB but approval of SSI, because the borderline age rule "does not say that the AJL must place a claimant in a higher age category because he will benefit from it.").

Even assuming the borderline age rule would apply here, the Court finds no err. As noted, the borderline age rule is discretionary. *Lockwood*, 616 F.3d at 1071-72. Further, the ALJ is not required to make express written findings concerning a claimant's borderline age situation. *Id.* at 1073-74. In *Lockwood*, the ALJ mentioned the claimant's date of birth, the applicable age category, and cited 20 C.F.R. § 404.1563(b). The Ninth Circuit held this was sufficient to show that the ALJ considered using the older age category because it demonstrated "that the ALJ knew she had discretion 'to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case.'" *Id.* at 1072.

19

Likewise, here, the ALJ cited Plaintiff's date of birth, the applicable age categories, and cited 20 C.F.R. § 404.1563. (A.R. 33.) The Ninth Circuit has held this satisfies the requirement that the ALJ consider whether to use an older age category. In addition, like *Lockwood*, the ALJ relied on the testimony of a vocational expert in determining that Plaintiff was not disabled prior to November 8, 2011. (A.R. 33-34.) As such, the court is "satisfied the ALJ did not 'apply the age categories mechanically.'" *Id.* at 1072.

Accordingly, the Court rejects Plaintiff's request to remand this matter on the basis of the borderline age rule.

## V. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**, and that Plaintiff's motion for summary judgment (Doc. 11) is **DENIED**.

**IT IS ORDERED**.

DATED this 27th day of March, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge